IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

UNITED STATES OF AMERICA

vs.                         No.4:15-cr-142 JM

JAVIER LEON

## ORDER

Defendant was arrested on March 30, 2016 after police found more than 500 grams of methamphetamine during a search of his 18-wheel tractor trailer. Defendant has moved to suppress the evidence obtained during the search on several grounds. (Document No. 26) After consideration of the evidence and argument presented at the hearing on the motion on January 24, 2017, the motion to suppress is denied.

### Factual Findings

From the evidence presented at the hearing, the Court finds the following facts to be true for the purpose of considering the motion to suppress. On the afternoon of March 30, 2016, Corporal Olen Craig of the Arkansas State Police observed a tractor trailer parked on the shoulder of an on-ramp to Interstate 40 in Lonoke County with the driver sitting inside. Craig, who had been an Arkansas State Trooper for 34 years as well as being a certified truck driver for over 30 years, pulled over in front of the truck for a welfare check on the driver, Defendant Javier Leon.

When Craig walked back to the truck to talk to Leon, Leon stated that he knew that he was not supposed to be parked on the on-ramp but asked if it was okay to park there if he had an emergency. Craig asked Leon if he was having an emergency, and Leon stated that he was not. Leon said that he had pulled over to talk to his dispatcher. Craig asked Leon what he was

1

hauling and asked to see Leon's logbook and bill of lading.  Leon told him he was hauling furniture and gave the requested documents to Craig.

According to Craig, Leon seemed very nervous to be talking to him, and he thought the time entries in the logbook were not what he would have expected based on his experience in trucking.  Craig next asked Leon if the truck contained anything illegal and stated that Leon became very agitated and even more so when Craig proceeded to ask him about whether specifically-named illegal drugs, including methamphetamine, were in the truck. Based on what he considered to be irregularities in the logbook and Leon's extreme nervousness when questioned about drugs, Craig asked Leon for permission to search the truck about 5 minutes into his first contact with Leon.  Leon gave permission for the search.  Craig told Leon that he had a right to deny permission to search and again asked Leon if it was okay to search, and Leon again said it was okay.  There was no indication at any time that Leon had difficulty understanding or communicating to Craig in English.

Craig began the search by looking in the cab.  Then Leon unlocked the padlock on the trailer, which was packed with furniture boxes making it impossible for Craig to actually search the trailer.  At this point, about 10 minutes from the initial contact with Leon and about three minutes after Leon gave his consent, Craig called for a K-9 unit to continue the search.  Corporal Chase Melder and his K-9 unit arrived at the trailer within five minutes of Craig's call.  Approximately four minutes after the K-9 began sniffing the trailer, he alerted for narcotics.  After moving some furniture boxes and searching the interior of the trailer above the area where the K-9 alerted, Melder located a large quantity of suspected methamphetamine within five minutes of the K-9's alert.  Leon was arrested and has been charged with possessing with the intent to distribute more than 500 grams of a mixture containing methamphetamine.  Following

his arrest he was taken to the Lonoke County detention facility where he waived his Miranda rights and consented to a videotaped interview that lasted over an hour; the interview was conducted in English. Leon never asked for a Spanish interpreter or indicated that he did not understand a question.

While he does not challenge the legitimacy of the initial investigative stop, Leon challenges the constitutionality of the subsequent search and has moved to suppress the evidence obtained as a result of the search. First, Leon argues that the search and seizure was unconstitutional because Craig did not have a reasonable suspicion of criminal activity. He also argues that the time it took to conduct the search was not a *de minimus* intrusion, thus making the search unreasonable. Finally, Leon raises several arguments regarding his consent to the search: that it was tainted by illegality as it exceeded the bounds of an investigative stop, that it was involuntary given as English was not his primary language, and that the search exceeded the scope of the consent.

## Analysis

On the date of the search in question, on March 20, 2015, the law did not require an officer to have reasonable suspicion to conduct a dog sniff so long as the traffic stop was not unreasonable prolonged as determined under the circumstances of each case. Under then-existing precedent, "even without reasonable suspicion following the completion of a traffic stop, 'seizures of less than ten minutes [were permissible] as *de minimis* intrusions [and did] not amount to an unreasonable seizure.'" *United States v. Englehart*, 811 F.3d 1034, 1041 (8th Cir. 2016)(quoting *United States v. Robinson,* 455 F.3d 832, 834 (8th Cir.2006)). While the parties argued the existence of reasonable suspicion, this did not become a requirement until the law changed with the Supreme Court's decision in *Rodriguez v. United States*, 135 S. Ct. 1609

(2015) the month after this stop was conducted[1]; therefore, the Court is not required by make a determination on this issue.

After hearing the evidence presented at the hearing, the Court finds that the delay following the conclusion of the initial traffic stop until the dog sniff was deployed was a *di minimis* intrusion.  As set forth in the factual findings, the time from Craig's first contact with Leon to the arrival of the K-9 unit was no more than fifteen minutes.  The first several minutes of this time was part of the unchallenged traffic stop in which Craig was inquiring about why Leon was stopped on the on-ramp.  The evidence supports the conclusion that from the time Craig asked for and Leon gave his consent to search to the time the K-9 unit arrived, less than ten minutes had elapsed.  This short delay constitutes a *di minimis* intrusion.[2]  Additionally, once Leon consented to the search, he consented to the extension of the traffic stop while the search is conducted.  *United States v. Rivera*, 570 F.3d 1009, 1013–14 (8th Cir. 2009).

Leon also challenges that his consent was voluntary since it was asked for and given in English, which is not his primary language.  After observing Leon during the hearing, both while he testified and while he was listening to other witnesses, the Court is convinced that he had no trouble understanding English as it was spoken.  Leon frequently answered questions put to him prior to his interpreter having time to repeat the questions in Spanish and appeared to have no difficulty following the hearing without relying on his interpreter.  In addition to its own

---

[1] In fact, the Court would not have found that reasonable suspicion was established under these facts.  Craig testified that he had reasonable suspicion sufficient to prolong the initial stop based on two factors:  (1) Leon's extreme nervousness when questioned about transporting illegal drugs and (2) what he considered discrepancies in Leon's logbook.  There was nothing illegal in the logbooks; Craig simply questioned the timing of the trips (waiting two days after a load to leave) and the two weeks' time off.  While the Court respects Craig's years of experience in law enforcement, his description of Leon's perceived nervousness and the concerns he raised about the logbook entries, without more, do to not rise to the level of reasonable suspicion in the Court's estimation.

[2] "[S]eizures of less than ten minutes [were permissible] as *de minimis* intrusions [and did] not amount to an unreasonable seizure." *United States v. Robinson,* 455 F.3d 832, 834 (8th Cir.2006

observations, the Court finds the testimony of the officers who had contact with Leon both before and after his arrest to be credible when they testified about his apparent ability to comfortably understand their questions and to communicate his answers in English.

In addition to challenging the voluntariness of his consent on the basis of a language barrier, Leon also argues that the dog sniff exceeded the scope of the consent he gave. The Court disagrees. We measure the scope of consent to search by a standard of objective reasonableness. *United States v. Urbina,* 431 F.3d 305, 310 (8th Cir.2005). "The issue is what 'the typical reasonable person [would] have understood by the exchange between the officer and the suspect.'" *United States v. Siwek*, 453 F.3d 1079, 1085 (8th Cir. 2006) (quoting *Florida v. Jimeno,* 500 U.S. 248, 251(1991). It is clear that Leon was aware that Craig suspected him of transporting drugs when Craig asked Leon specifically if he was carrying methamphetamines or other drugs and then asked for permission to search. Leon does not challenge that he gave his consent, nor does he argue that he ever withdrew his consent. The Court has no trouble concluding that the call for a K-9 to search a trailer known to be completely packed with boxes of furniture was within the scope of what a reasonable person would have expected when giving consent to search.

## Conclusion

For these reasons, Defendant's motion to suppress evidence (Document No. 26) is denied. IT IS SO ORDERED this 30th day of January, 2017.

_____
James M. Moody Jr.
United States District Judge