## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **VS.** | ) | **CASE NO. 4:15cr00142-01 JMM** |
| | ) | |
| **JAVIER LEON** | ) | |

### MOTION FOR A JUDGMENT OF ACQUITTAL
### AND, ALTERNATIVELY, MOTION FOR NEW TRIAL

Comes now the Defendant Javier Leon, by and through his attorneys, the James Law Firm, and for his Motion for a Judgment of Acquittal, states:

### INTRODUCTION

Javier Leon was indicted on July 7, 2015, in a one-count indictment alleging that he knowingly and intentionally possessed with intent to distribute more than 500 grams of a mixture or substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Following a jury trial lasting from May 1st to May 4th, 2017, the jury returned a verdict of guilty against the Defendant on the one count as charged.

The Defendant requests that the Court grant a Judgment of Acquittal pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure, stating that there was insufficient evidence whereby a reasonable jury could have found the Defendant guilty of the alleged offense beyond a reasonable doubt. Under Rule 29, a district court shall enter a judgment of acquittal if the evidence presented at trial

1

is insufficient to sustain a conviction. Fed. R. Crim. P. 29(a). The Court must view the evidence before the jury in the light most favorable to the government and must give the government the benefit of all reasonable inferences drawn from the evidence, overturning the jury's verdict only if the evidence is such that a reasonable-minded jury must have entertained a reasonable doubt as to the government's proof of one or more elements of the offense. *See United States v. Noibi*, 780 F.2d 1419, 1421 (8th Cir. 1986) (citation omitted).

The Defendant avers that after this Court considers the proof—or rather the lack thereof—presented by the government over the course of the four-day trial under the microscope of the authorities presented below, the Court will agree that a Judgment of Acquittal is warranted in Leon's case. This Court must "determine whether the circumstantial evidence of [Leon]'s knowledge of the presence of the methamphetamine was sufficient for a reasonably minded jury to have found the possession element." *United States v. Ojeda*, 23 F.3d 1473, 1476 (8th Cir. 1994). Even when viewed in the light most favorable to the Government, the evidence was insufficient to justify a reasonable inference that Leon knew he was driving a trailer containing methamphetamine, and thus that he knowingly possessed it.

## I. THERE WAS INSUFFICIENT EVIDENCE ON THE ELEMENT OF KNOWING POSSESSION FOR THIS CASE TO BE SUBMITTED TO A JURY

Under 21 U.S.C. § 841(a), the Government had to prove beyond a reasonable doubt that Leon 1) knowingly possessed methamphetamine; and 2)

intended to distribute it. *United States v. Howard*, 427 F.3d 554, 557 (8th Cir. 2005). The first element may be proven by either actual possession or constructive possession. *Id.* Constructive possession "requires knowledge of an object, the ability to control it, and the intent to do so." *Id.*

At trial, the government attempted to prove that Leon constructively possessed the drugs found in his trailer, and it was the major issue in dispute throughout the trial. This case boiled down to whether the evidence justified a reasonable inference that Leon knew the drugs were there. The jury was instructed regarding constructive possession under Instruction 8.02 of the 8th Circuit Model Jury Instructions ("A person who, although not in actual possession, has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.").

There was insufficient evidence on the knowledge element whereby a reasonable jury could have found the Defendant guilty of the alleged offense beyond a reasonable doubt, and thus insufficient evidence to sustain Leon's conviction. His conviction must be dismissed under Rule 29 accordingly.

During the jury trial, the government asked the jury to infer Leon's knowledge based on six pieces of evidence: 1) Leon's ownership of the tractor and trailer; 2) Leon's ownership of the padlock and key; 3) American West's policies

of the driver tailgating the items for each delivery and not permitting anyone else into the trailer; 4) that Leon left his tractor-trailer overnight at the Knox & Knox warehouse in Moreno Valley, California; 5) that one box from the top left of the rear portion of the trailer was moved to the right; and 6) that Leon was purported to have acted nervously by speaking with his hands when initially encountered by Corporal Craig.

Although somewhat unclear, the government also appeared to ask the jury to infer that Leon was aware of increased police presence on Interstate 40 on the date of his arrest because he possessed a CB radio in the cab of his truck, and then to infer from that that Leon was parked on the side of the entrance ramp in order to evade law enforcement. And then to infer from that the Leon was aware of the drugs. However, this was mentioned by only one witness and was not pointed to in closing arguments.

None of these inferences were reasonable based on the evidence adduced at trial. There was ample testimony that three American West employees loaded the trailer when Leon was not present, and only their supervisor was present to testify at trial. None of the employees purported to have loaded the trailer testified at trial. Leon's ownership of both the tractor-trailer and the lock, without more, does not compel an inference that he must have known that drugs were in the trailer, especially when the evidence showed that he did not load the trailer. There was no

evidence about who actually loaded the drugs, or even when they were loaded, or where. Whether Leon owned the truck or drove a company one makes no difference in this equation since he is not the one who loaded it and only inspected the complete load from the outside of the trailer.

The mere fact that American West's policies would have arguably led to Leon discovering the meth at his fourth or fifth stop has no bearing on whether he knew about the methamphetamine at the time of his arrest. An event that may occur in the future is not indicative of the defendant's present or prior knowledge. *See United States v. Carlon*, 2008 U.S. Dist. LEXIS 66019, at 11, 2008 WL 38545391 (E.D. Ark. Aug. 18, 2008), *affirmed by United States v. Zepeda-Carlon*, 2010 U.S. App. LEXIS 6519 (8th Cir. 2010) (unpublished)) (finding that Zepeda's lies to officers regarding the details of his travel following the discovery of drugs in a hidden compartment of his car, without more, was insufficient to show that he knew about the contraband or the illegal purpose of the trip *before* his arrest). Further, there was no evidence on how American West trucks are actually unloaded in practice, as the government's witnesses testified to no personal knowledge of such practices outside of the company policies. None were familiar with the unloading procedure at the first stop in Cullman, Alabama, or indeed with any of the remaining stops.

The mere fact that Leon parked his tractor-trailer at a storage facility for one night before leaving is not indicative of any knowledge about what was inside the trailer. Leon had contracted with Knox & Knox for several years to store his truck when he was not on the road and to permit him to store the truck close to his home located in the same city. The government asked the jury to speculate that the trailer *could* have been loaded while it was being stored at Knox & Knox, but simply adduced no evidence whatsoever to support this point. At most, the government proved that there was an opportunity to load the trailer while it spent the night at Knox & Knox, but even if accepts, that fact proves nothing with regard to Leon's knowledge.

The fact that one box was moved from the left to the right side at the top of the load closest to the trailer door does not compel an inference of knowledge. At most, it proves that someone moved the box in order to place the methamphetamine. At best, it proves that things shift during the course of cross-country road trips inside eighteen-wheelers. But this does nothing to show that Leon was aware that such occurred, or that the moving of the box related in any way to the trailer being loaded with the methamphetamine. This fact does not compel any reasonable inference that Leon knew about the drugs.

Further, there were several other likely causes for the shift adduced at trial. Trooper Melder testified that he climbed up the load and crawled around on boxes

and furniture in order to locate the methamphetamine. This process of climbing and crawling may have caused the box to move. Further, Leon had travelled for more than a day at that point across hundreds of miles in multiple states. The box may have moved on its own based on bumps in the road. One misplaced box is not indicative that the driver knew what was behind the wall of boxes contained underneath that one errant box. Any suggestion to the contrary is not reasonable given the evidence.

Any inference of knowledge based on the presence of a CB radio in Leon's cab is preposterous, as there was no evidence to support this attenuated, tertiary inference. Any such inference would be sheer speculation, and not based in anything adduced at trial.

## II. This Case is Similar to Other Cases Where The Eighth Circuit Reversed the District Court's Denial of a Defendant's Motion for a Judgment of Acquittal

In *United States v. Pace*, the defendant was stopped for speeding, and police later found almost 200 pounds of cocaine in his station wagon. 922 F.2d 451, 452 (8th Cir. 1990). Pace had no driver's license and had no valid registration for the car, but Pace did give his identification information to the Missouri State Trooper. *Id.* at 453. Pace then signed a written consent form allowing a search of the car. *Id.* at 452. Another officer arrived, and the two officers located the cocaine in four different pieces of luggage located in the cargo area of the station wagon. *Id.* The

cargo area of the car was "almost entirely concealed by a horizontal shade or covering," and "Pace's travel bag . . . was in the back seat." *Id.* at 453. There was evidence that a black van with two people in it traveled with the station wagon all the way from California to Missouri. *Id.* While Pace was aware of the van's presence, he was unaware of why the van made the trip. *Id.*

During Pace's jury trial, the prosecutor asked the jury to draw three inferences from the evidence: 1) that the sheer amount of cocaine involved suggested Pace's knowledge; 2) that the street value of those drugs (estimated at $12-15 million) meant they would not be casually entrusted to a blind mule; and 3) that the extended amount of time Pace spent in the car meant he had to have discovered what was in the luggage. *Id.*

Following jury trial, Pace was convicted of possessing cocaine with intent to distribute it. *Id.* at 451. The District Court denied Pace's motion for acquittal, but the Eighth Circuit later reversed, noting:

> While reasonable inferences from the evidence weigh against the defendant, speculation does not. It is reasonable, for example, to infer that Pace entered the back seat to get in his duffel bag. But without additional evidence that Pace opened or examined Mason's luggage that was in the back-seat floorboard, it is merely conjecture to conclude he knew what those packages contained. There is, moreover, no evidence that Pace ever explored the cargo area of the station wagon, much less that he examined or opened Mason's luggage that was stored there.

*Id.* at 453. The Court reversed Pace's conviction despite the officer's testimony that Pace was nervous during questioning. *Id.* The Court also

8

noted that the mere presence of the individuals in the black van did "not establish that Pace knew he was in the midst of criminals." *Id.* The Court noted that "[w]ithout additional evidence pointing to the criminal nature of the trip, this exchange does not prove that Pace refused to see what this trip was really about." *Id.*

In *United States v. Aponte*, the Eighth Circuit reversed a district court's denial of the defendant's motion for a judgment of acquittal based on insufficient evidence following his conviction for possession with intent to distribute 500 grams or more of a methamphetamine mixture. *See* 619 F.3d 799 (8th Cir. 2010). During a traffic stop, officers obtained consent to search Aponte's vehicle and found a kilo of methamphetamine inside the plastic lining of a round cooler located in the cargo area of the vehicle. *Id.* at 800. "No fingerprints of any value were found on the methamphetamine packaging or the outside of the cooler. Three latent fingerprints and one latent palm print were developed on the white liner of the cooler, but the prints did not match Aponte." *Id.* at 802. Similar to this case, "there [was] no video of the search that occurred at the sheriff's office, and the photographs of the vehicle and cooler were all taken after the officers removed items from the vehicle." *Id.* at 802 n.1.

The Eighth Circuit reversed Aponte's conviction, finding that "[n]o evidence suggest[ed] that Aponte . . . saw the cooler – much less that they inspected the

cooler at a close enough distance to notice an irregularity." *Id.* at 805. The Court also noted that the "common indicia of guilty consciences were not present in this case." *Id*. The Court noted that: 1) Aponte answered officers' questions completely; 2) the government offered no evidence showing that the proffered explanation for travel was implausible or false; and 3) there was no evidence linking Aponte to previous drug use or to the area where the drugs were found. *Id.* at 805-06.

Leon's case is very similar to both *Pace* and *Aponte*. As in *Pace*, there was no evidence that Leon ever "explored" the trailer, specifically the area purported to contain the methamphetamine. Further, nothing that Leon said was ever disproven during the ensuing investigation. Like the defendant in *Aponte*, Leon answered officers' questions fully; the government offered no evidence showing that his explanation for travel was implausible or false; and there was no evidence linking him to previous drug use or to the area where the drugs were found. Just as in both cases, Leon should be acquitted because even when viewed in the light most favorable to the government. The evidence was insufficient to justify a reasonable inference that Leon knew he was hauling a trailer containing methamphetamine.

Unlike in *Pace*, there was no evidence adduced at Leon's trial that knowledge can be inferred from the sheer quantity of methamphetamine found in Leon's trailer. The government's expert, DEA Agent Brad Abbott, testified that

drug traffickers usually use witting mules to traffic large shipments. However, he also testified that drug traffickers capable of moving this much methamphetamine are very sophisticated, and thus more likely to use someone as a blind mule than a lower-level drug trafficker. Simply put, there was no evidence presented for the jury to infer that Leon knew about the drugs solely because of their weight and value. If anything, the evidence pointed to the opposite conclusion: that Leon was a blind mule.

III. Leon Exhibited No Indicators of A Guilty Conscience Regarding His Purported Knowledge of the Methamphetamine

Courts throughout the Eighth Circuit have identified several indicia of a guilty conscience, i.e., knowledge, in cases involving blind-mule claims. *See, e.g.*, *Aponte*, 619 F.3d at 805-06. None such indicia were present in this case. Such indicia include when a defendant:

- Lies or gives evasive or implausible answers in response to questioning by law enforcement. *See United States v. Cortez*, 935 F.2d 135, 143 (8th Cir. 1991) (Cortez said the van containing drugs was owned by his uncle, but then stated he did not know his uncle's name when asked by law enforcement); *United States v. Santana*, 524 F.3d 851 (8th Cir. 2008); *United States v. Ojeda*, 23 F.3d 1473, 1476 (8th Cir. 2005).

- Makes statements that are later disproven by further investigation. *United States v. Sanchez*, 252 F.3d 968 (8th Cir. 2001).

- Makes statements that are later disproven by evidence found inside the vehicle. *See United States v. Bustos-Flores*, 362 F.3d 1030, 1036 (8th Cir. 2004) (conviction affirmed based partly on evidence found inside the vehicle

that directly contradicted defendant's statements to officers that he had been in town for several days trying to meet girls and looking for a job).

- Asks what he/she will gain by cooperating with law enforcement. *See Cortez*, 935 F.2d at 143 (defendant asked, "What's in it for me?" when officers asked if he would cooperate).

- Has an implausible or false explanation for their travels. *See United States v. Marquez*, 462 F.3d 826 (8th Cir. 2006); *Bustos-Flores*, 362 F.3d at 1030; *United States v. Butler*, 238 F.3d 1001, 1004 (8th Cir. 2001); *United States v. Martinez*, 168 F.3d 1043, 1048 (8th Cir. 1999); *United States v. Ojeda*, 23 F.3d 1473, 1476 (8th Cir. 2005) ("Ojeda maintained that he was on the extensive car trip in order to visit a relative for whom he knew no address or telephone number").

- Has false paperwork regarding their reason for travel. *See United States v. Marquez*, 462 F.3d 826, 829-30 (8th Cir. 2006) (conviction supported by false bill of lading, false log books, and implausible explanation that commercial truckers had no knowledge of the contents of their trailer).

- Has a history of committing drug crime(s). *See United States v. Willis*, 89 F.3d 1371, 1377 (8th Cir. 1996) (affirming conviction, in part, based on defendant's previous drug trafficking and possession of drug paraphernalia).

- Possesses other drugs on their person. *See United States v. Jimenez*, 478 F.3d 929, 933 (8th Cir. 2007) (defendant had other drugs in her purse); *Santana*, 524 F.3d at 852.

- Possesses evidence showing that he/she was present in or around the area where the drugs were found. *See United States v. Hernandez-Mendoza*, 600 F.3d 971, 977 (8th Cir. 2010) (tools used to access a hidden compartment containing drugs were found inside defendant's vehicle); *United States v. Ojeda*, 23 F.3d 1473, 1476 (8th Cir. 1994) (defendant's fingerprints were on the drug packages and pins used to the access a secret compartment where drugs were located were found in Ojeda's visor).

- Is present inside a vehicle with obvious signs of tampering. *See United States v. Serrano-Lopez*, 366 F.3d 628 (8th Cir. 2004).

- Does not appear surprised by the discovery of drugs or his/her subsequent arrest, or does not question why he/she is being arrested. *See United States v. Serrano-Lopez*, 366 F.3d 628, 636 (8th Cir. 2004) (citing *Ortega v. United States*, 270 F.3d 544, 545-46 (8th Cir. 2001)).

None of these factors were present in this case.

In cases involving tractor-trailers specifically, the Eighth Circuit has identified certain factors tying the driver to drugs found within his trailer. In *United States v. Sanchez*, the defendant stopped his tractor-trailer at a weigh station off of Interstate 44 in Missouri. 252 F.3d 968, 970 (8th Cir. 2001). During a safety inspection, the officer became suspicious based on several factors. First, the trailer lacked proper registration papers. *Id.* Next, the bill of lading indicated that Sanchez was hauling onions from Springer, Oklahoma, and the officer explained that in 25 years on the job, he had never seen produce that originated in Springer, Oklahoma. *Id.* Next, the weight provided on the bill of lading did not match the weight shown on the weigh station scales. *Id.* Further, the trailer contained only a half load of produce despite Sanchez's claim to be driving the trailer to the east coast. *Id.* The officer asked Sanchez if he could search the trailer, obtained consent, and located 2,265 pounds of marijuana in a hidden compartment behind a fake wall in the trailer. *Id.*

Much of the information that Sanchez provided to the officers later turned out to be false or inconsistent with other evidence discovered during the ensuing investigation. *Id.* at 971. Sanchez told officers he was travelling between

13

Minnesota and New York, yet officers located receipts from a store in El Paso, Texas inside the cab. *Id.* Sanchez stated that he picked up the load from Coseman's produce in Springer, Oklahoma to bring to Coseman's Produce in Pittsburgh, Pennsylvania. However, law enforcement later determined that no such businesses existed in those cities and that Sanchez had given fake addresses and phone numbers. *Id.* Officers "also found a number of items in the cab of the truck that could have been used to build the fake wall in the trailer." *Id.* at 973.

At trial, Sanchez testified that he had no knowledge of the marijuana in the trailer, but a jury convicted him and he was sentenced to a term of imprisonment. *Id.* at 971-72. On appeal, the Eighth Circuit affirmed his conviction, distinguishing his case from *Pace*, *supra*, where the defendant gave officers truthful information when questioned and did not load the luggage containing contraband into the vehicle. *Id.* at 973.

Similarly, in *United States v. Johnson*, the Eighth Circuit affirmed a defendant's conviction for possession to intent to distribute more than 2,200 pounds of cocaine that were found in his trailer following a stop at a weigh station. 285 F.3d 744, 745-46 (8th Cir. 2002). In affirming the denial of Johnson's motion to acquit, the Court pointed to several inconsistencies and/or lies in Johnson's statements, the fact that Johnson did not know his exact destination for his load of

fruit, and the later discovery that Johnson travelled hundreds of miles off the route between California and Maryland to go to El Paso, Texas. *Id.* at 746-48.

Leon's case is easily distinguishable from *Sanchez* and *Johnson*. Leon was driving an established route for a legitimate company, and had valid paperwork for each piece of furniture in his trailer and for each stop on his planned route. Leon was not found off of his route, nor was any evidence located showing that he had been off-route. The evidence showed that Leon was keeping to that planned route, and was on pace to make his first scheduled delivery in Alabama on time. He was truthful with officers, and was cooperative throughout his encounters with them. Absolutely nothing that he told officers was later disproven. Based on this Circuit's prior decisions regarding blind-mule claims in tractor-trailer cases, this Court should grant this motion.

Further, there is less evidence of false exculpatory statements—in this case, none whatsoever—than in *Pace*, where the defendant initially made inconsistent statements about the purpose of the trip. *See also United States v. Mendoza-Larios*, 416 F.3d 872 (8th Cir. 2005) (reversing Mendoza-Larios's conviction, in part, because *Pace*—which the Eighth Circuit reversed—had more evidence against Pace compared to the case against Mendoza-Larios). Like in *Mendoza-Larios*, there was no such inconsistency in Leon's statements in this case. There was stronger evidence in *Mendoza-Larios*—which the Eighth Circuit also reversed—

than in the case against Leon. In *Mendoza-Larios*, the vehicle in question had

problems with the passenger-side dash, which ultimately turned out to be a hidden

compartment containing drugs. 416 F.3d at 876. Further, in *Pace*, the defendant

was aware that a van was making the trip alongside his car, but did not know why.

Based on the logic of *Mendoza-Larios*, and given that there was significantly less

evidence against Leon than the defendants in other cases that were reversed under

Rule 29, this Court should grant Leon's motion accordingly.


IV. The Evidence Was Insufficient to Justify Any Reasonable Inference That Leon
    Had the Requisite Knowledge for This Case to Be Submitted to the Jury

In the case at bar, Mr. Leon did not give evasive answers, or ask law

enforcement officers what he could gain by cooperating with them. Rather, he was

completely cooperative. He allowed officers to search his trailer, and gave a

statement lasting more than one hour in duration after waiving his *Miranda* rights.

Leon's stated purpose for his travel—hauling furniture from American West's

warehouse in Mira Loma, CA, to several sites in the Southeast—was

uncontroverted, and all of his paperwork was in order. There was no evidence

linking Leon to previous drug use or to the area of the trailer containing the drugs.

The fact that Mr. Leon was allegedly nervous during his initial encounter

with Officer Craig is not evidence of a guilty conscience, and does not compel a

reasonable inference that Leon knew about the methamphetamine in the trailer. As

this Court aptly noted in its written order denying Leon's motion to suppress physical evidence, "the Court would not have found that reasonable suspicion was established under these facts." Doc. 37, at 4 n.1 ("While the Court respects Craig's years of experience in law enforcement, his description of Leon's perceived nervousness and the concerns he raised about the logbook entries, without more, do to not rise to the level of reasonable suspicion in the Court's estimation."). Further, the Eighth Circuit reversed the denial of a motion for judgment of acquittal in *Pace* despite the defendant "appear[ing] nervous and fidgety during the questioning." 922 F.2d at 453.

Leon's mere presence in a tractor attached to a trailer containing drugs does not support a reasonable inference that the person knew about the drugs. *See Aponte*, 619 F.3d at 808 (citing *Mendoza-Larios*, 416 F.3d at 876; *Pace*, 922 F.2d at 453); *see also United States v. Fitz*, 317 F.3d 878, 883 (8th Cir. 2003); *United States v. Serrano-Lopez*, 366 F.3d 628, 635 (8th Cir. 2004). There was no evidence that Leon ever explored the trailer, only that he inspected the fully packed load before closing his trailer and leaving the American West warehouse. At that point, the trailer was packed floor to ceiling and multiple witnesses testified that area where the methamphetamine was purported to have been found was 10-15 feet back and out of sight. *See Pace*, 922 F.2d at 453 (finding no reasonable inference that Pace knew about drugs in luggage located in the cargo area of a station wagon

17

without additional evidence that he "ever explored the cargo area of the station wagon, much less that he examined or opened [the] luggage that was stored there). While this policy may have shown that Leon would have explored the cargo area several stops into his planned route, it is completely unrelated to whether Leon possessed the requisite knowledge at the time of his arrest.

The Government adduced evidence that there were fingerprints located on some of the five-gallon bottles containing methamphetamine, but that they did not match Leon. Further, the drugs were not in plain view, but rather 10-15 feet back in the trailer, well hidden based on the sheer weight and size of the tons of furniture stacked nearly to the ceiling of the trailer obstructing them from view. Trooper Melder had to climb up on top of the furniture and boxes and crawl on his stomach in order to move deeper into the trailer. There was also nothing else tying Leon to the methamphetamine in terms of financial records, phone records, or anything other than their mere presence inside the trailer. In conclusion, there was insufficient evidence that Leon had the requisite knowledge for his conviction.


### V. If the Court Deems That a Judgment of Acquittal is Not Warranted, Then the Defendant Requests That the Court Grant Him a New Trial.

Defendant Leon avers that there were several rulings by the Court that merit the granting of a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Those improper rulings include, but are not limited to, the following:

1. The Court erred when it denied the Motion to Suppress Evidence because law enforcement unconstitutionally prolonged the encounter with Leon to conduct a canine sniff absent reasonable suspicion of criminal activity. Further, Leon's consent to search his trailer was involuntary and any subsequent search exceeded the scope of any validly given consent.

2. The Court erred when it denied the final two paragraphs of Leon's proffered theory-of-the-case instruction regarding mere presence in a tractor attached to a trailer containing contraband, which read:

> Mere presence in or proximity to a tractor that is attached to a trailer containing drugs is not enough to support a conviction for illegally possessing a controlled substance with intent to distribute unless you find beyond a reasonable doubt that defendant was aware of the presence of the drugs and not just merely present.
> Exercising dominion or control over the trailer, either directly or through other persons, does not equate to exercising dominion or control over the items contained within that trailer.

Defendant's Proffered Jury Instruction No. 17.

## Conclusion

The government failed to put on any evidence proving that Leon was anything more than an unwitting courier, a blind mule. Nothing indicated that Leon had any idea that his trailer contained methamphetamine, when/where the methamphetamine was loaded into the trailer, or where it was ultimately destined to go. The evidence adduced at trial does not compel any reasonable inference that Leon knew about the methamphetamine, and thus that he possessed it in the legal sense. Accordingly, no reasonable jury could find his guilt beyond a reasonable doubt on that element. For these reasons, as well as the mistakes made in

evidentiary rulings before and during the trial, Defendant Leon prays that the Court grant his Motion for a Judgment of Acquittal or in the alternative grant his Motion for a New Trial.

WHEREFORE, Leon respectfully requests this Court grant his Motion for a Judgment of Acquittal, or alternatively, his Motion for a New Trial; a hearing on this motion; and any other just and proper relief to which he may be entitled.

Respectfully submitted,

/s/ Michael Kiel Kaiser
MICHAEL KIEL KAISER
Ark. Bar No. 2015001
Attorney for Defendant
James Law Firm
1821 S. Broadway St.
Little Rock, AR 72206
(501) 375-0900
Email: Michael@JamesFirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

Chris Givens
Assistant United States Attorney
P.O. Box 1229
Little Rock, AR 72203

/s/ Michael Kiel Kaiser
MICHAEL KIEL KAISER

20